BERZON, Circuit Judge, concurring: I concur in the opinion with the following observations: Were we reaching the issue,[1] I would hold that both Supreme Court precedent and our own case law compel the conclusion that ERISA § 502(g)(1) fees should be awarded on appeal to a party that successfully defends the fees it was awarded at the district court. Put another way, “fees-on-fees” should be nigh unto automatic, in ERISA cases as in others. We should not troop through the Hummell factors, see Hummell v. S. E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980), with regard to the fees appeal—even though, as the opinion in this case illustrates, the result of doing so properly is likely another fee award. The case law on fee-shifting statutes is well-settled. See, e.g., Comm’r, I.N.S. v. Jean, 496 U.S. 154, 161-63, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 408-09, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). “[C]ourts have uniformly held that time spent establishing the entitlement to and amount of the fee is compensable under federal fee-shifting provisions .... ” Blixseth v. Yellowstone Mountain Club, LLC, 854 F.3d 626, 629 (9th Cir. 2017). We have applied this principle in numerous contexts. See, e.g., id. (fees under 28 U.S.C. § 1927); In re S. Cal. Sunbelt Developers, Inc., 608 F.3d 456, 462 (9th Cir. 2010) (fees following dismissal of an involuntary bankruptcy petition); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978, 981 (9th Cir. 2008) (fees under the Fair Debt Collection Practices Act); see also Kinney v. Int’l Bhd. of Elec. Workers, 939 F.2d 690, 693 (9th Cir. 1991) (common-law fee-shifting). The underlying logic is that unless securing a fee entitlement on appeal is cost-free to the party awarded fees on the merits, the initial fee award will be effectively reduced or eliminated, fundamentally undermining the purposes of the fee-shifting provision. See Bandak v. Eli Lilly & Co. Ret. Plan, 587 F.3d 798, 803 (7th Cir. 2009); Camacho, 523 F.3d at 981. These purposes include creating an incentive for attorneys to provide representation in cases where counsel might otherwise be difficult to obtain, or where it is particularly important that the represented party obtain the full monetary amount due, without having to expend an additional sum to secure it. See, e.g., Jean, 496 U.S. at 164, 110 S.Ct. 2316 (“If the Government could impose the cost of fee litigation on prevailing parties ..., the financial deterrent that the EAJA aims to eliminate would be resurrected.”); Ne. Ohio Coal. for the Homeless v. Husted, 831 F.3d 686, 724-25 (6th Cir. 2016) (“[Diluting the overall fee award by failing to provide fully compensatory fees for fees undermines the congressional intent behind [§ 1988], which is to encourage the private prosecution of civil rights suits through the transfer of the costs of litigation to those who infringe upon basic civil rights.” (internal quotation marks omitted)). In such cases, if fee-shifting is to mean anything, it must mean that the prevailing party actually obtains the benefit of its fee award, rather than depleting or exhausting it in the inevitable follow-on litigation. Moreover, if the party prevailing as to fees will not get its full fees for defending the award, the opposing party has leverage to force a discount to the fee award in settlement, without pursuing an appeal and expending its own attorneys’ fees to do so. Husted, 831 F.3d at 724. There is no doubt that the ERISA fees provision at issue here, 29 U.S.C. § 1132(g)(1), is a fee-shifting provision of the sort covered by these precedents. The ERISA fees provision contemplates that a court may award reasonable fees and costs “[i]n any action ... by a participant, beneficiary, or fiduciary.” Id. (emphasis added). A plain reading of this language makes clear that Congress intended the fee-shifting provision to apply to the “action” as a whole, rather than to discrete aspects of it. Nor does anything in the statute suggest that the fee award qualifies as damages or operates as a sanction; where the fees are part of a damages or sanction award, the party who wins the fee award is not entitled to fees incurred in defending it on appeal. Sunbelt, 608 F.3d at 464 (“The distinction ... is between those statutes which permit recovery of attorney’s fees as damages, and which are therefore consistent with the American Rule, and those which permit the recovery of. attorney’s fees qua attorney’s fees and therefore create an exception to the American Rule.’? (citations and internal quotation marks omitted)); Blixseth, 854 F.3d at- 629 (“[T]he Supreme Court [has] distinguished fee-shifting provisions, where eligibility turns on the merits or outcome of the litigation and costs are shifted for the litigation - as a whole, from sanctions statutes like the former version of Rule 11, where eligibility turned on whether a specific pleading was well-founded and costs are shifted only for a discrete portion of the litigation.”). Moreover, the Supreme Court has referred to § 1132(g)(1) as a “fee-shifting” provision and as a “statutory deviation[] from the American Rule.” Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 253-54, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). And the standard for ERISA fees under Hardt focuses on the action as a whole, not on success on any individual component of the action. “A claimant does not satisfy th[e] requirement [of achieving some success on the merits] by achieving trivial success ... or a purely procedural victory, but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party’s success was substantial or occurred on a central issue.” Id. at 255, 130 S.Ct. 2149 (emphasis added) (alterations and internal quotation marks omitted).[2] The opinion in this case gets halfway to ah “automatic entitlement rule” by concluding that the district court was required to'consider the entire litigation under its second Hwmmell analysis. As long as the second Hwmmell analysis[3] accounts for everything that preceded it, a party’s fee entitlement isn’t likely to change from one stage of litigation to the next. The reasons for upholding fees from the district court will apply equally to granting them for the appeal. The result is, in effect, something close to the ordinary fees-on-fees approach this-court has applied in other fee-shifting contexts. But if the effect is largely the same, refusing to adopt the ordinary approach is all the more difficult to justify. As noted, the ERISA fees provision, 29 U.S.C, § 1132(g)(1), is not meaningfully different from any other fee-shifting provision controlled' by Jean. See Bandak, 587 F.3d at 802-03. Of course, we do require a Hwm-mell analysis before ERISA fees will be awarded. Simonia v. Glendale Nissan/Infiniti Disability Plan, 608 F.3d 1118, 1119 (9th Cir. 2010). But nothing in Simonía requires that the Hummell analysis be performed more than once, or separately at the fees-on-fees stage. The amount of a fee award may be determined separately at the fees-on-fees stage, with the filing of a new fee application. See Jean, 496 U.S. at 163, 110 S.Ct. 2316 (“[N]o award of fees is ‘automatic.’ ... Exorbitant, unfounded, or procedurally defective fee applications—like any other improper position that may unreasonably protract proceedings—are matters that the district court can recognize and discount.”). But as Jean also stresses, the entitlement to fees-on-fees and the amount of such fees are distinct questions. Id. at 161-63, 110 S.Ct. 2316; see also Atkins v. Apfel, 164 F.3d 986, 989 (9th Cir. 1998). Under a fee-shifting statute, the threshold entitlement question is answered only once. As the opinion notes, this court has previously conducted a separate Hummell analysis for fees awarded on an ERISA merits appeal. Operating Eng’rs Pension Trusts v. B & E Backhoe, Inc., 911 F.2d 1347, 1356 (9th Cir. 1990); see also Op. at 1056 n.7.[4] We could, however, limit Operating Engineers to its procedural posture, and distinguish it from fees-on-fees disputes such as Micha’s, where the logic underpinning the automatic entitlement rule is particularly compelling.[5] See Voice v. Stormans Inc., 757 F.3d 1015, 1016 (9th Cir. 2014). In sum, had the automatic entitlement issue been raised at the district court, I would have taken this opportunity to make clear that parties who seek fees on a successful ERISA fees appeal are not required to prove their entitlement to fees a second time. As the issue was not raised in the district court, and as the majority has opted not to exercise its discretion to decide a new issue raised for the first time on appeal, I concur in the opinion. . As the main opinion notes, Group Disability affirmatively invited use of the Hummell factors in analyzing fees for the fees appeal, arguing exclusively on that basis to the district court. See Op. at 1055-56. Only on appeal did Group Disability assert that appellate fees are nearly always available for the successful defense of a fee award. We have discretion to “consider an issue raised for the first time on appeal if the issue presented is purely one of law and the opposing party will suffer no prejudice as a result.” United States v. Valdez-Novoa, 780 F.3d 906, 914 (9th Cir. 2015) (internal quotation marks omitted). The majority has opted not to exercise that discretion here. See Op. at 1055-56. I accede to that decision. , Baker Botts L.L.P. v. ASARCO, LLC, — U.S. —, 135 S.Ct. 2158, 2164-66, 192 L.Ed.2d 208 (2015), does not support a contrary conclusion. Baker Botts’ held that the statute at issue in that case—§ 330(a)(1) of the Bankruptcy Code—was not a fee-shifting statute that displaced the ordinary American Rule. Id. Section 330 authorizes a court to award "reasonable compensation for actual, necessary services rendered,” 11 U.S.C. § 330(a)(1)(A), ,a phrase the Supreme Court held "neither specifically nor explicitly authorizes courts to shift the costs of adversarial litigation from one side to the other.”' Baker Botts, 135 S.Ct. at 2165. Consequently, the Court held, there was no basis to conclude that fees-on-fees were allowed under § 330. Here, by contrast, there is no question that the provision at issue is a fee-shifting provision, for which fees incurred on appeal are allowed. . Or the third Hummell analysis. Or the fourth. Among the problems with repeating the Hummell analysis with every fee request is that it forces parties back to court to adjudicate fees from prior litigation adjudicating fees. The Supreme Court has disapproved of this sort of “Kafkaesque judicial nightmare of infinite litigation, to - recover fees for the last round of litigation over fees..” Jean, 496 U.S. at 163, 110 S.Ct, 2316 (internal quotation marks omitted), . I am less confident than the majority that Credit Managers can be described as a merits appeal. See Credit Managers Ass'n of S. Cal v. Kennesaw Life & Acc. Ins. Co., 25 F.3d 743, 746 (9th Cir. 1994). But even as a fees-on-fees case, Credit Managers does not preclude an automatic entitlement here. Credit Managers assumed Hummell governed, without considering any possible fees-on-fees distinction. Id. at 752. It is therefore nonprecedential on that point. See Sorenson v. Mink, 239 F.3d 1140, 1149 (9th Cir. 2001) ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions.” (citation omitted)); Estate of Magnin v. C.I.R., 184 F.3d 1074, 1077 (9th Cir. 1999) ("When a case assumes a point without discussion, the case does not bind future panels.”). . Because Jean requires a single fee entitlement decision under fee-shifting statutes such as this, the approach taken in Operating Engineers—a separate entitlement analysis for defending a merits victory on appeal—is almost certainly wrong. But as the present case concerns only fees for a fees appeal, Operating Engineers has no direct application. Moreover, like Credit Managers, Operating Engineers assumes, without explanation, that Hummell applies a second time to appellate fees, and so likely does not bind future panels. Operating Engineers, 911 F.2d at 1356-57; Estate of Magnin, 184 F.3d at 1077.